*E-Filed 1/5/2011*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

RANDALL G. HUCK,

        Plaintiff,

  v.

KONE, INC.,

        Defendant.

No. C 10-1845 RS

**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**

I. INTRODUCTION

Plaintiff Randall Huck filed his Complaint in the Superior Court of California, County of San Francisco, alleging wrongful termination under California's Fair Employment and Housing Act ("FEHA"), harassment, retaliation in employment, and intentional infliction of emotional distress against his former employer, Kone, Inc. Kone removed the matter to this Court on April 28, 2010, on the grounds that the parties are completely diverse and the amount in controversy exceeds $75,000.[1]  28 U.S.C. § 1441; 28 U.S.C. § 1332. In May of 2010, Huck filed a motion to remand, arguing that defendant's removal notice failed to supply sufficient facts demonstrating that the amount in controversy more likely than not exceeds $75,000. Huck did not, however, actually *deny*

---

[1] Kone advises that it is incorporated in Delaware and maintains its principal place of business in Illinois. Huck is a citizen of California.

that the recovery he seeks falls below that sum. In late July of 2010, the case was reassigned to this Court and Huck re-noticed his motion. Kone opposes the motion and, relying on an estimation of Huck's annual salary, insists that plaintiff's request for past wages alone likely exceeds the jurisdictional threshold.

On October 13, 2010, this Court issued an Order directing the parties to engage in discovery limited to the amount in controversy question and establishing a schedule for the parties to provide supplemental briefing. In its supplemental brief, Kone argues that Huck did not directly answer questions in Kone's interrogatories as to either the total numerical amount Huck claims or his annual salary prior to termination. Kone has nonetheless submitted evidence gleaned from Huck's initial disclosures suggesting that his annual salary approximated $115,000, not including an annual bonus. Huck also timely filed his supplemental opposition brief. Although he refuses expressly to state that his damages fall below the $75,000 threshold, he insists Kone has not shown that they likely rise above it. He also indicates that Kone's insurer made monthly disability payments to Kone, beginning in September of 2009, and notes that he receives monthly disability payments from the State of California. These, he suggests, should be subtracted from any calculation of lost wages, at least for purposes of calculating the amount in controversy.

## II. LEGAL STANDARD

28 U.S.C. Section 1332(a) vests district courts with "original jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between" diverse parties as defined by subsections (a)(1)-(4). Section 1441 provides that "civil action[s] brought in a State court of which the district courts of the United States have original jurisdiction," may be removed by the defendant to federal district court. 28 U.S.C. § 1441(a). Where a defendant removes a case from state court, that party has "'always' borne the burden of establishing federal jurisdiction, including any applicable amount in controversy requirement." *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 682-83 (9th Cir. 2006) (*quoting Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)). If a complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence

that the amount in controversy requirement has been satisfied. *Id.* (citations omitted). To overcome the "strong presumption" against removal jurisdiction, the defendant must present "the *underlying facts* supporting its assertion . . . ." *Gaus*, 980 F.2d at 567 (emphasis in original). The district court may consider whether it is "facially apparent" from the complaint that the jurisdictional amount is in controversy. *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). Where the complaint is silent on the amount of damages requested, the court may consider facts in the removal petition, and "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Id.* (*quoting Allen v. R. & H. Oil & Gas Co.*, 63 F.3d 1326, 1335-36 (5th Cir. 1995)).

### III. DISCUSSION

#### 1. Huck's Annual Salary

Kone argues first that Huck's claim for lost wages alone exceeds the jurisdictional threshold. In California, "[t]he general rule is that the measure of recovery by a wrongfully discharged employee is the amount of salary agreed upon for the period of service, less the amount which the employer affirmatively proves the employee earned or with reasonable effort might have earned from other employment." *Smith v. Brown-Forman Distillers Corp.*, 196 Cal. App. 3d 503, 513 (1987). While Huck refused to answer directly the interrogatory question directed to his salary, Kone has produced a document obtained as part of Huck's initial disclosures. A letter sent from Unum Life Insurance Company of America ("Unum") to Huck on October 8, 2009 references Huck's "pre-disability" monthly earnings. The relevant portion of that letter reads as follows: "During the course of claim evaluation, your employer provided us with earnings information to establish your pre-disability basic monthly earnings as $9,583.34." (Decl. of Dawn Williams, Ex. 6.) The monthly figure translates to an annual salary of just over $115,000.

Documents Huck has attached to his opposition brief corroborate this estimate. He attaches, for example, a copy of a final pay stub he received from Kone, covering the period between March 1, 2009 through March 15, 2009. The stub states that Huck's "regular earnings" were levied at a rate of $4,791.67 per pay period. Because a month contains two pay periods, the stub plainly

reinforces Kone's estimation of Huck's gross monthly income ($9,583.34). Huck also submits a copy of his employment offer letter, which discusses an annual salary of $115,000. The letter promises that Huck would be entitled at each year's end to a bonus of up to 20 percent of his base salary, for a possible "annualized total cash compensation opportunity of $138,000." Kone acknowledges that he received a bonus of $20,306 in 2008. In Huck's complaint, he states that this figure reflects the *net* sum he received. (Compl. ¶ 9.) Accordingly, his bonus was actually *higher* than promised.

Because Kone was terminated in March of 2009, and because this case was removed in April of 2010, Kone calculates that a recovery of lost wages would climb to at least $115,000, as more than a year separates the two. *See, e.g.*, *Rivera v. Costco Wholesale Corp.*, No. 08-2202, 2008 WL 2740399, at *1 (N.D. Cal. July. 11, 2008) (calculating lost wages in wrongful termination case from date of termination to removal to establish the amount of controversy *at the time* of removal). In fact, assuming a bonus at or near the rate received in 2008, Huck *could* stand to recover around $140,106 (or, technically, a higher sum if the gross amount of the bonus is considered) in wages lost during the relevant timeframe.[2] In response, Huck counters that these figures ignore the fact that disability payments Huck received following termination mitigate these possible damages.

2. Mitigation

In his opposition brief, Huck suggests that while he never obtained other employment, he received monthly disability payments from Kone's insurer, Unum, as well as from the State of California. These, he insists, should be subtracted from his monthly salary—$9,583.34—on which Kone has relied. The point is not without some support in California case law, particularly where it

---

[2] In his opposition brief, Huck points out that Kone declared in a Case Management Statement its belief that Huck had filed his FEHA claim outside the Act's statute of limitations, barring any recovery of lost wages. Huck characterizes that tactic as highly inconsistent with Kone's argument here that Huck's claimed economic damages are not only high, but exceed the threshold limit. It is not obvious on the face of Huck's complaint that he cannot, "to a legal certainty," recover the damages claimed. *Kelly v. Fleetwood Enterprises, Inc.*, 377 F.3d 1034, 1037 (9th Cir. 2004) ("If it 'appear[s] to a legal certainty that the claim' cannot meet the statutory threshold, the suit should be dismissed for lack of jurisdiction.") (citation omitted). Whether or not Kone has an adequate statute of limitations defense is a merits question, and it would be inappropriate for the Court to decide it here.

NO. C 10-1845 RS
ORDER

4

is the *plaintiff* who concedes that a damage award should be offset by disability payments. *See, e.g.*, *Mayer v. Multistate Legal Studies, Inc.*, 52 Cal. App. 4th 1428, 435-36 (1997) (finding that, although a plaintiff who received disability payments may not be precluded from seeking lost wages for wrongful termination, it may be appropriate correspondingly to offset damages). *But c.f.*, *Billetter v. Posell*, 94 Cal. App. 2d 858, 860 (1949) ("[Government unemployment] [b]enefits of this character are intended to alleviate the distress of unemployment and not to diminish the amount which an employer must pay as damages for the wrongful discharge of an employee.").

For support, Huck relies on the same Unum letter discussed above. In that letter, Unum notified Huck that it had approved his request for disability benefit payments. It further informed him that it released his first check, covering the period from August 23, 2009 to September 22, 2009, in the amount of $1,594.33. The letter also indicated that Unum was aware Huck was receiving disability benefits from the state of California in the amount of $4,155.67 each month (in light of this figure, the letter explained to Huck that the $1,594.33 figure represented a deduction from the "gross basic benefit" to which he would otherwise be entitled, but for the payment from the state). Huck does not submit evidence of when, exactly, he began receiving disability payments from the state, nor does he include any other verification that he continued to receive payments from Unum up to the point of removal. Drawing all inferences in his favor, this Order will assume for the sake of argument that Huck began receiving the state payments at the time of termination and received both it and the Unum payments (which commenced in September) each month up to removal.

Huck's last pay period ended mid-way through March of 2009. The matter was removed at the end of April, 2010. At the time of removal, then, Huck sought lost wages for 12.5 months (or $119,799.67). Because the Unum payments did not kick in until September, Huck received disability payments solely from the state for a period of 5.5 months (or $22,856.19). Once Unum's payments began, Huck received combined disability payments in the amount of $5,750 for eight months (or $46,000). When the total disability payments (or $68,856.19) are subtracted from Huck's base salary ($119,799.67), Huck could still recover $50,943.48 in the form of lost wages. In

all likelihood, he would have received some sort of bonus at year's end, although Huck correctly indicates that this bonus would have been dependent on his performance (and so the exact amount is uncertain). Assuming Huck received a bonus in 2009 similar to the one he received in 2008 (approximately $20,000), Huck's recovery would climb to roughly $71,000. The amount nudges the threshold line.

### 3. Other Claimed Damages

Huck does not merely seek recovery of past wages. He also requests future wages, compensation for emotional distress, pain and suffering, and recovery of medical and insurance expenses. In his opposition brief, he emphasizes his belief that punitive damages are warranted. Certainly, his expected recovery from these is indefinite. Kone does, however, convincingly detail just what this recovery might look like. As to future wages, Huck is currently 52 years old. Assuming an age of retirement at 65, *see General Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581 (2004), Huck could potentially recover 13 years' worth of lost wages. Kone posits that, based on Huck's $115,000 base salary, he could stand to recover future losses in excess of $1,495,000.

Next, in that Huck has not quantified a dollar amount for his claimed non-economic damages (such as emotional distress), Kone offers as instructive in this context the district court's approach to a similar dilemma in *Rivera v. Costco Wholesale Corporation*, 2008 WL 2740399 at *3-4. In *Rivera*, a plaintiff filed a FEHA wrongful termination claim and alleged that his employer fired him after suffering a back injury at the work place. The *Rivera* plaintiff sought recovery for emotional distress but did not state a dollar amount. Faced with a similar dispute over the amount in controversy (economic damages reached about $50,000, so the dollar amount attached to non-economic damages controlled whether or not the court had jurisdiction), and a similarly vague claim for damages relating to emotional distress, *Rivera* held that a defendant may introduce evidence of jury verdicts in cases involving comparable facts. 2008 WL 2740399 at *3. If those verdicts returned "substantial" non-economic rewards, *Rivera* reasoned that a defendant could rely on them as evidence establishing that a plaintiff's claim surpassed the $75,000 threshold. The court highlighted three cases where a jury returned awards in excess of $200,000. *Rivera*, 2008 WL

2740399 at *4. *Rivera* thus concluded that the "cases establish, by a preponderance of evidence, that emotional distress and punitive damage awards in employment discrimination cases may be substantial." *Id.* Combined with the roughly $50,000 already plainly in controversy, the court held that the defendant had met its burden.

Kone supplies no persuasive reasoning why this Court should not reach a similar conclusion. Huck essentially falls back on the fact that it is Kone's burden to show that the amount in controversy *more likely than not* exceeds $75,000. He concludes that Kone's approach is fatally speculative, but does very little to refute Kone's presentation that his claimed economic damages either exceed or nudge the threshold line, and that his claimed non-economic damages are "substantial" and in all likelihood would carry his recovery well across the threshold boundary.

## IV. CONCLUSION

For the reasons set forth above, Kone has met its burden of showing the requisite amount in controversy and Huck's motion to remand must therefore be denied.

IT IS SO ORDERED.

Dated: 1/5/2011

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

**THIS IS TO CERTIFY THAT A HARD COPY OF THIS ORDER WAS MAILED TO:**

**Randall G. Huck**
1631 Lake Street
San Francisco, CA 94121

DATED: 1/5/2011

/s/ Chambers Staff
Chambers of Judge Richard Seeborg

No. C 10-1845 RS
ORDER