*E-Filed 12/15/11*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

RANDALL G. HUCK,

        Plaintiff,

  v.

KONE INC.,

        Defendant.
_____/

No. C 10-01845 RS

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff Randall Huck brings a claim for wrongful termination against his former employer, Kone, Inc. He advances a number of violations under the California Fair Employment and Housing Act ("FEHA") and additionally charges defendant with intentional infliction of emotional distress. Defendant Kone moves for summary judgment on all of Huck's claims. For the reasons described below, Kone's motion for summary judgment is granted.

## II. RELEVANT FACTS

On October 6, 2007, Plaintiff Huck started working at Kone, Inc., as the Western Regional Environmental Health and Safety Director. In the beginning of September the following year, Huck began experiencing pain and a substantially limited range of motion in his left arm. These

1  symptoms prevented Huck from performing routine tasks at work and he decided to seek medical
2  attention.  On September 19, 2009, Dr. Savant examined Huck and concluded that his condition was
3  aggravated by typing.  Savant suggested that Huck begin using dictation software at work to reduce
4  the pain.

5        Immediately thereafter, Huck informed his supervisor, Dennis Viehweg, of the doctor's
6  recommendation.  In response, Kone provided him with "Dragon Speaking" dictation software.
7  Despite such accommodation, Huck's pain did not subsist and he revisited Savant on January 16,
8  2009.  At this appointment, Savant diagnosed Huck with elbow tendinitis and carpal tunnel
9  syndrome.  Huck continued to work, relying on a prescribed elbow brace and dictation software to
10 alleviate his symptoms.

11       On February 24, 2009, Huck woke up in extreme pain and realized that his left arm was
12 inflamed.  He called Savant who recommended that Huck stop working immediately and come in
13 for further evaluation on March 6, 2009.  After speaking with Savant, plaintiff drove to his doctor's
14 office to get a note attesting to his need to take medical leave until March 6, 2009.  Huck then
15 reported to work, stopping on the way at OfficeMax to pick up posters for Viehweg.  Shortly after
16 he arrived at work, Huck ran into Viehweg.  During this encounter, Huck asserts that he gave
17 Viehweg the OfficeMax posters along with his doctor's note.  He allegedly also told Viehweg that
18 he would not be able to attend the meeting the next day.  To buttress this claim, Huck provides his
19 OfficeMax receipts and an email from Viehweg regarding the posters.  (Pl's. Ex. 10).   Huck further
20 maintains that before leaving the office that day, he informed the Western Region Director of
21 Human Resources, Rebecca Trotsky, of his upcoming temporary medical leave.

22       Pursuant to his doctor's advice, Huck stayed home the following day and instructed his wife,
23 Zohra Evans-Huck, to manipulate manually his left shoulder and wrist.  Plaintiff also alleges that on
24 February 26, 2009, Viehweg phoned Huck to inquire into why he had missed the meeting the day
25 before.  Huck states that the conversation was hostile even after he reminded Viehweg of his current
26 medical leave.  He claims that Viehweg was so enraged that Huck feared losing his job.   This
27 anxiety allegedly led Huck to defy his doctor's orders and travel to Los Angeles on a pre-planned
28

business trip the very same day.[1]

On February 26, 2009, Huck received an annual bonus of $20,306.00. Eligible for a bonus up to 20% of his base salary, he received one pegged at 13%. Internal personnel documents support Huck's bonus, crediting his diligence and positive attitude at the office. (Pl's. Ex. 11).

Viehweg called Huck again on February 27, 2009, to inquire into why Huck's medical leave caused him to miss the local meeting on February 26, but did not prevent him from traveling for work. Huck explained that he had tried to comply with his doctor's orders by staying home on February 26, but after speaking with Viehweg that day, he worried about getting fired and decided to go to Los Angeles. Huck also explained that despite his best attempts to continue working, the trip had only exacerbated the pain. He was determined therefore to take his doctor's advice and stop working until his medical reevaluation in March.

On February 27, 2009, Huck went on a pre-planned business trip to Hawaii. In the Complaint he states that on the evening of February 27, Viehweg told him to cancel the trip. Huck attests that he decided to go despite Viehweg's directions, because the airfare and hotel were nonrefundable. Kone disputes this timeline, stating that Viehweg instructed plaintiff to cancel the business meeting on February 26, before he left for Hawaii. Huck's deposition supports defendant's sequence of events: in the deposition, Huck admits that Viehweg told him to cancel the meeting the day before he left for Hawaii. (Def's. Ex. B). Although Huck complied with Viehweg's request and canceled the meeting, he still went to Hawaii using the pre-paid flight and hotel reservations. Huck justifies his decision to go to Hawaii, in spite of Viehweg's instructions, by asserting that he hoped the trip would help him heal. He also thought it futile to let a prepaid trip go to waste. Furthermore, Huck contends that he sent Viehweg an email informing him of the decision to go on the trip.[2]

---

[1] Defendant Kone's motion for summary judgment does not mention this conversation.

[2] Prior to oral argument, there was no evidence in the record to support such correspondence. At the motion hearing, however, Huck submitted email correspondence in which he appears to inform Viehweg that he canceled the Hawaii meeting, but still intends to travel there for rehabilitation purposes. Defendant contests both the admissibility and trustworthiness of these emails, pointing to a number of format and structure irregularities: First, Huck presents a confirmation email stating that Viehweg read and received Huck's email about his plan to travel on February 27, 2009, at 8:46 p.m. The email, however, was not sent until February 28, 2009 at 8:46. Additionally, the submitted emails contain different headers. While one places the "Sent" line above the "To" line, another email reverses the order. Finally, the dates of the emails do not follow a logical sequence. Huck


Defendant disagrees with much of plaintiff's narrative. Kone points out that in Huck's deposition he admits he did not inquire into whether the travel could be canceled or booked for another date. Furthermore, Kone's expense records reveal that Huck charged his rental car to the company credit card on March 1, 2009; a charge neither authorized nor prepaid. Defendant also emphasizes that Huck and Viehweg spoke while Huck was in Hawaii and states that Huck misled Viehweg into believing that he was still in California.

Huck disputes many of defendant's contentions. He maintains that he arranged for all non-prepaid trip charges to be charged to his account. This includes a number of charges at the Kamana Beach Hotel. (Pl's. Ex. 15). He also asserts that he submitted, or intended to submit, all of the prepaid expenses to Kone so that he could reimburse Kone for the trip. For this proposition, he refers to the Kone credit card policy regarding repayment of personal expenses, but offers no evidence that he actually submitted the appropriate forms. Furthermore, Huck insists he was unaware that the rental car was not a pre-paid expense. He states that on March 2, 2009, when he discovered he mistakenly had made unauthorized charges to the company credit card, he called his wife to make sure their joint account had sufficient funds to cover the rental car and other expenses.

On March 3, 2009, Viehweg emailed Kone employee, David Rickman, to investigate Huck's recent company charges. Rickman provided him with a list of the charges made to Huck's company card over the preceding several days, revealing that Huck had in fact been in Hawaii and that he had charged his rental car to the company credit card. According to company policy, unauthorized use of the company card represents grounds for disciplinary action. (Pl's. Ex. 15). It is for that reason Kone insists, that it decided to fire Huck on March 5, 2009. For support, defendant submits a "termination notice" stating that Huck "is being discharged for insubordination as well as misuse of company funds." (Def's. Ex. D).[3]

Huck's narrative of events is different. He claims that on March 3, 2009, Human Resources

---

emails Viehweg on February 28, 2009, at 4:37 to explain that he received Viehweg's voicemail about canceling the Hawaii trip and requests Viehweg to "[p]lease let me know as soon as possible if you still want me to cancel." Then, in an email dated, February 27, 2009, at 7:45 p.m. Viehweg responds: "Yes. Cancel the trip." Huck subsequently responds in an email on February 28, 2009, at 8:46 that he has canceled the meeting, but has decided to go on the trip.

[3] The termination notice is dated March 4, 2009 and signed on March 5, yet states that Huck's last day of work was March 6, 2009. An email from Trotsky, a Kone employee, however, supports the March 5 termination date. (Def's. Ex. F).

No. C 10-01845 RS
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT
4

contacted him, directing him to fill out a short term disability form. (Pl's. Ex. 16). On the same day, Huck received an email from Viehweg asking to meet on March 6. (Pl's. Ex. 17). Huck explained to Viehweg that he had a doctor's appointment and needed to postpone the meeting. Plaintiff then alleges that Viehweg responded by saying that Huck does "not get to decide when you work and when you don't." (Pl's. Opp'n. to Mot. for Summ. J. at 7).

Huck received his disability papers on March 6, 2009. He filled them out immediately and returned them to Gloria Haut in Human Resources. On March 12, 2009, Haut emailed Huck to tell him that he was ineligible for disability benefits because he was fired on March 5, 2009, before Kone received his papers. Huck maintains that this is inaccurate because he was actually fired on March 6, 2009. To support the March 6 termination date, Huck notes discrepancies in defendant's paperwork concerning his last day of work. He indicates that there are conflicting dates in his termination notice and that he received the short-term disability form from the Human Resources Department on March 6, 2009, a day after Kone maintains that he was fired.

On April 1, 2009, Huck obtained COBRA's eligibility forms from Kone which included the American Recovery and Reinvestment Act ("ARRA") premium reduction form. On April 13, 2009, he was informed that he was not ARRA eligible because he had been fired. Due to this ineligibility, Huck contacted the San Francisco Department of Labor ("DOL") who told him that termination was not grounds for denial of ARRA reductions. After contacting Kone, the DOL representative was told that the cause for Huck's termination was "gross misconduct," thereby making Huck ineligible for ARRA.

Huck commenced this suit against his former employer in state court alleging disability discrimination, violations of California's Fair Employment & Housing Act ("FEHA"), and intentional infliction of emotional distress.[4] Kone removed the case to this Court on the basis of diversity jurisdiction. It then moved for summary judgment.

### III. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall

---

[4] Although the Complaint states only one claim for relief, Huck's pleadings and opposition papers suggest that he is also basing his wrongful termination claim on allegations of retaliation, harassment, failure to provide reasonable accommodation, failure to engage in the interactive process, and intentional infliction of emotional distress.

be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party who seeks summary judgment bears the initial responsibility of identifying an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies this initial burden, it shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. "Only disputes over facts that might affect the outcome of the suit under governing law" are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue exists if the non-moving party presents evidence from which a reasonable factfinder, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Id.* at 248-49.

## IV. DISCUSSION

### A. Disability Discrimination Claim

It is not clear whether this claim and the allegation of failure to accommodate are being advanced within one claim for relief. Huck asserts, as evidence of discrimination, that defendant refused to accommodate his disability as required by FEHA. On multiple occasions he claims that he made requests for a temporary leave of absence which were denied. He states that Kone's "discriminatory animus was obvious" from its "refusal to respect the nature of Huck's medical leave." (Compl. ¶ 27). Furthermore, Huck alleges that Kone decided to fire him instead of providing the reasonable accommodation of a temporary leave of absence.

Under FEHA, it is unlawful for an employer to "discharge [a] person from employment [or] . . . discriminate against [a] person in compensation or in terms, conditions, or privileges of employment" because of his physical disability. *See* Cal. Gov. Code § 12940(a). When considering motions for summary judgment in cases arising under FEHA, federal courts apply the *McDonnell Douglas* three-step burden shifting analysis. *Zeinali v. Raytheon Co.*, 636 F.3d 544, 522 (9th Cir. 2011); *Dept. of Fair Emp't. & Housing v. Lucent Techs., Inc.*, 642 F.3d 728, 745 (9th Cir. 2011) (recognizing that federal courts must adopt California's use of the Court's burden shifting test when considering employment discrimination claims); *Guz v. Bechtel Nat. Inc.,* 24 Cal. 4th 317, 354

(2000). Under this framework, plaintiff must first establish a prima facie claim of disability discrimination. *Zeinali*, 636 F.3d at 552. If plaintiff effectively states this prima facie claim, the burden shifts to the employer to demonstrate a "legitimate, nondiscriminatory reason for the challenged action." *Id.* at 552 (quoting *Dawson v. Entek Int'l*, 630 F.3d 928, 934-35 (9th Cir. 2011)). Finally, if the employer makes a sufficient showing of a legitimate reason, the burden shifts back to the employee to prove that the employer's asserted reason is a pretext for discrimination. *Id.* at 552-53.

### 1. Prima Facie Case of Disability Discrimination

To establish a prima facie case of disability discrimination under FEHA, a plaintiff must establish that: (1) he has a physical disability as defined by the statute; (2) he can fulfill the duties of employment with or without a reasonable accommodation; and (3) he was discriminated against on account of his disability. *See Zeinali*, 636 F.3d at 552 (citing *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317 (Cal. 2000)). At the summary judgment stage, the burden on the plaintiff to demonstrate these elements is "minimal and does not even rise to the level of preponderance of the evidence." *Jefferson v. Fed. Express Corp.*, No. C 09-04235 JSW, 2010 WL 3630984, at *3 (N.D. Cal. Sept. 14, 2010) (quoting *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002)).

#### a. Physical Disability

First, Huck must demonstrate that he is disabled by FEHA standards. FEHA defines a "physical disability" as the existence of a medical condition that hinders a "major life activity," such as one's employment. Cal. Gov. Code § 12926(k)(1)(A), (B). A plaintiff can prove his disability by showing that he had a medical diagnosis which limited his ability to work and that his employer was aware of this disabling condition. *See* Cal. Gov. Code § 12926(k)(1)(B)(I). Under FEHA, the definition of disability is broad and should be construed as such. *See* Cal. Gov. Code § 12993.

Huck has shown that he is disabled pursuant to FEHA. Huck began experiencing pain and reduced mobility in his left arm in September 2008. He soon visited his physician who told him that his condition was work related and recommended the use of dictation software. Huck informed his Kone supervisor of the doctor's medical advice and the company provided him with the program, "Dragon Speak." Despite this accommodation, Huck's pain persisted and he returned to Dr. Savant

who advised him that his condition was likely exacerbated by work and that he should take a leave of absence. *See Artega v. Brink's Inc.*, 163 Cal. App. 4th 327, 348 (Cal. App. 2d 2008) (acknowledging that while pain is not always a FEHA disability, "[a]n assessment must be made to determine how, if at all, the pain affects the specific employee."). Huck alleges that he immediately informed Kone of this desired leave of absence and, soon after, filled out a short term disability form. These facts demonstrate that Huck had a medically cognizable disability which limited his ability to type and travel: tasks that are essential to his job. This is sufficient to satisfy the broad FEHA definition of a disability. *See* Cal. Gov. Code § 12993. Huck, therefore, has satisfied the first element of his prima facie claim for employment discrimination.

### b. Plaintiff's Qualifications

To establish the second factor of a prima facie claim for discrimination, Huck must show that, despite his disability, he is qualified to work at Kone because he can still perform the essential functions and "fundamental duties of the employment position." Cal. Gov. Code § 12926(f). Once Huck informed Kone of his disability, the company accommodated his condition with dictation software. Huck's pain, however, persisted and his doctor soon recommended that he take a temporary leave of absence until his appointment on March 6, 2009. He told Viehweg of his doctor's advice and filed for disability leave in the beginning of March. Kone fired Huck soon after. At the time of Huck's termination, his doctor had not yet had the opportunity to determine Huck's ability to continue working. Rather, the purpose of the temporary leave was for Dr. Savant to have the chance to assess Huck's condition before he returned to Kone. The medical leave may have been finite. Neither plaintiff nor defendant knew at the time of termination whether Huck would be able to continue working. The Court, therefore, cannot assume that, as a matter of law, Huck was not qualified to continue working. *See Wong v. Pape Mach., Inc.*, No. CIV. S-08-0042 FCD DAD, 2009 WL 937481, at *7 (E.D. Cal. Apr. 7, 2009) ("It is unclear whether, at the time plaintiff took leave or at the time of her termination, either plaintiff or defendant knew if plaintiff would be able to return to work . . . . [O]n the record before it, the court cannot find that plaintiff was not a qualified individual as a matter of law.").

### c. Causation

Finally, Huck must satisfy the third element of his discrimination claim: that his employer fired him because of his disability. Cal. Gov. Code § 12940(a). To fulfill this burden, Huck needs to demonstrate first that the decision-making officials at Kone knew about his disability when they chose to fire him. *Franco v. Pier 1 Imps.*, No. EDCV 07-946-VAP (JCRz), 2008 WL 4217848, at *16 (C.D. Cal. Sept. 11, 2008) (citing *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982)). Then, Huck must present enough evidence to infer that this knowledge of plaintiff's disability was what caused his termination. *Id.* at 17.

In the Complaint, Huck adequately illustrates that his supervisor and other Kone employees knew about his disability. They also knew about his request for temporary medical leave. Huck has submitted evidence supporting this claim, including correspondence between Huck and Kone's human resources department as well as Huck's completed short-term disability form. (Pl's. Exs. 6, 7, 16). Although the parties disagree as to the extent of Kone's knowledge about Huck's condition or whether Huck was actually approved to take leave, it is undisputed that Kone officials were aware Huck was experiencing some sort of disabling condition. To this effect, they willingly provided him with both dictation software in 2008, and Kone's short-term disability form.

Having satisfied the burden of demonstrating that Kone knew about his disability, Huck next offers evidence of causation, suggesting that Kone officials fired him because of his known disability and his request for a reasonable accommodation. He explains that on February 24, 2009, he told Viehweg and the director of human resources that he needed to take a leave of absence from his job. Then, after disobeying his doctor's orders and traveling to Los Angeles, he once again informed Viehweg that he could not return to work until at least March 6, 2009. Huck contends that these conversations, coupled with his need to take temporary leave, were the impetus for his termination. He asserts that it was not a coincidence that he was fired within a few days of his request for short term leave. (Compl. ¶ 7).

"The temporal proximity between an employee's disclosure of a medical condition and a subsequent termination can satisfy the employee's prima facie causation requirement." *Pier 1 Imports*, 2008 WL 4217848, at *17 (citing *Clark County Sch. Dist v. Breeden*, 532 U.S. 268, 273 (2001)); *see Davis v. Team Elec. Co.*, 520 F.3d 1080, 1094 (9th Cir. 2008) ("Causation can be

inferred from timing alone where an adverse employment action follows on the heels of protected activity." (quoting *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002))). Here, plaintiff claims he told Kone about his condition in September or October of 2008. As his pain worsened, he kept his employer up to date on his progressive diagnosis. In early March 2009, The Human Resources Department at Kone called him to request that he complete the short-term disability form. Within the next few days, Huck was fired. Huck claims that Trotsky of Human Resources contacted him on March 3, 2009, and that he received the form on March 6, 2009. He further contends that he was fired on March 6, 2009. Alternatively, defendant asserts that Huck was fired on March 5, 2009, the day before he submitted his short-term disability form. Regardless of the exact termination date, Kone admits to learning about the disability only a few months before Huck's firing. At summary judgment, where courts hold plaintiffs to only a minimal standard in making their prima facie case, the mere proximity of all of these events is sufficient for the Court to infer causation. Huck has established a prima facie case of discrimination.

         2.    <u>Legitimate, Nondiscriminatory Reason for Termination</u>

Once Huck establishes a prima facie claim for discrimination, Kone must demonstrate a legitimate, nondiscriminatory reason for Huck's termination. An employer meets his burden under the *McDonnell Douglas* framework if he illustrates that the employee was fired because of a legitimate business purpose. *See, e.g.*, *Valimont v. Chevron Energy Tech. Co.*, No. 09–17485, 2011 WL 1979483, at *2 (9th Cir. May 23, 2011) (concluding that an employer had a legitimate reason when the employee violated the company's policies); *Hamed v. Macy West Stores, Inc.*, No. C–10–2790 JCS, 2011 WL 1935937, at *4 (N.D. Cal. May 20, 2011) (finding a legitimate purpose when defendant argued that the employee violated the store's coupon policies). The stated reason need not have been "wise or correct," but merely lawful and nondiscriminatory. *Lawler v. Montblanc*, No. 10-CV-01131-LHK, 2011 WL 1466129, at *7 (N.D. Cal. Apr. 15, 2011).

Defendant maintains that Huck was fired because he violated company policy in February and March of 2009. During this period, Viehweg directed Huck to cancel his trip to Hawaii. Huck went to Hawaii anyway, arguing that the trip was nonrefundable and was beneficial for his health. Kone asserts that Huck's reasoning for defying orders are irrelevant: regardless, he indisputably

1 violated company policy by making the trip. Furthermore, while in Hawaii, Huck charged his rental car to the Kone business account. Kone states that this constituted an unauthorized business charge and was grounds for disciplinary action. Kone used its judgment to determine that the proper punishment was termination. This is evidenced in Kone's termination notice, explaining the reasons for termination as, "insubordination as well as misuse of company funds." (Def's. Ex. D). Consequently, even if Huck had the intent to repay Kone for the Hawaii trip expenses, Kone had a nondiscriminatory reason to fire him for his violation of company policy. *See, e.g.*, *Dumas v. New United Motor Mfg., Inc.*, 305 Fed. Appx. 445, 448 (9th Cir. 2008) (finding a legitimate reason for termination when the employer pointed to violations of company policy). This showing is sufficient to satisfy Kone's burden to establish a legitimate reason for termination.

          3. <u>Pretext</u>

The burden then shifts back to Huck to demonstrate that Kone's proffered reason for termination is merely a pretext for discrimination. A plaintiff can prove pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Lucent Techs., Inc.*, 642 F.3d at 746 (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998)). To show pretext a plaintiff cannot merely make assertions or rely on conjecture. *See Martin v. Lockheed Missiles & Space Co., Inc.*, 29 Cal. App. 4th 1718, 1735 (1994). Rather, he must be explicit in his allegations and provide "specific and substantial evidence" of the employer's discriminatory motive. *Hersant v. Dep't of Social Servs.*, 57 Cal. App. 4th 997, 1005 (1997) ("It is not enough for the employee simply to raise triable issues of fact concerning whether the employer's reasons for taking the adverse action were sound. What the employee has brought is not an action for general unfairness but for [discrimination]."). A court must look at all the factors to determine if the evidence could convince a rational fact finder reasonably to infer that the employer's actual motive was discriminatory. *Guz*, 24 Cal. 4th at 361-62 (listing a number of factors to consider, including the strength of plaintiff's prima facie case, any probative value supporting that the employer's nondiscriminatory reason is false, and other evidence supporting the employer's

argument).  Otherwise, the court must grant the employer's motion for summary judgment.  *Id.* at 362.

Plaintiff argues that Kone's reason for termination, namely that Huck violated company policy, is merely a pretext for discrimination.  Huck claims that Kone fired him, not because of the Hawaii trip, but because he requested a reasonable accommodation in the form of temporary leave.  To buttress these assertions Huck pleads that he advised Viehweg and Human Resources of his doctor's recommendation to stop working.  He also submits a letter from Savant attesting to the doctor's note he wrote for Huck to give to his employer.  (Pl's. Ex. 8).

Despite this proffered evidence, Huck is unable to demonstrate that he was actually denied the requested accommodation.  He states that Viehweg called him to determine why Huck had missed a meeting the day after he went on medical leave, but does not offer any "specific or substantial evidence" of this conversation.  *See Hersant*, 57 Cal. App. 4th at 1005.  Even assuming this conversation occurred, however, standing alone, it is insufficient to establish pretext.  *See id.* at 1005 (requiring tangible evidence of discriminatory intent).  Furthermore, after this alleged phone call, Kone accepted Huck's leave of absence:  In his declaration, Viehweg states that he never instructed Huck not to take a medical absence and was surprised when Huck defied doctor's orders and went on the business trip to Los Angeles.  Additionally, Kone contacted Huck to fill out short term disability paperwork in the beginning of March.

Huck admits to taking leave pursuant to his doctor's advice.  He traveled to Hawaii for this very reason.  While Huck steadfastly insists that Kone retaliated against his request for leave by concocting a pretextual reason to fire him, there is no evidence for this allegation.  *See Martin*, 29 Cal. App. 4th at 1735 (requiring more than mere allegations to find pretext).  Conversely, there is ample evidence to support Kone's stated legitimate reason for termination: Huck violated company policy by going on a canceled business trip paid for by his employer.  He further violated that policy by charging additional items to the company credit card.  Even if Huck intended to pay Kone back, he undeniably broke the rules: Kone Company Payment Card Policy states that the "P-card should not be used for personal expenses.  In the event personal expenses are inadvertently charged to your P-card, attach a personal check payable to KONE." (Pl's. Ex. 15).  Both parties agree that Huck

1    used the card for personal expenses. Huck has not proffered any evidence that this violation was
2    inadvertent or that he tried to pay Kone back. Huck's claim of pretext, therefore, is lacking.

3          At oral argument and in supplemental briefing, Huck presents an email exchange in which
4    he allegedly informed Viehweg that he planned to travel to Hawaii despite the meeting's
5    cancellation. He contends that this evidence supports his claim of pretext because Viehweg knew
6    about his upcoming trip yet failed to forbid him from going or inform him that the trip was against
7    company policy. Kone objects to the admissibility and trustworthiness of these emails, referring to
8    a number of form and timeline irregularities contained therein. Even assuming these emails are both
9    admissible and credible, they do not establish pretext. They merely suggest that Huck informed
10   Viehweg of his intention to travel to Hawaii on the pre-paid trip; they do not indicate that Viehweg
11   approved of Huck's plan or authorized the subsequent charges to the company credit card. Huck,
12   therefore, is unable to present sufficient evidence to allow a rational fact finder to infer a
13   discriminatory motive. *See Lucent Techs., Inc.*, 642 F.3d at 746 ("[T]he employee must
14   demonstrate weaknesses, implausibilities, inconsistencies, or contradictions in the employer's
15   proffered legitimate reasons for its action that a reasonable factfinder could rationally find them
16   unworthy of credence."); *Guz*, 24 Cal. 4th at 358 ("[T]he ultimate issue is simply whether the
17   employer acted with *a motive to discriminate illegally*.") (emphasis in original).

18         Huck indicates that the timing of his narrative raises sufficient suspicion of pretext. He
19   asked for temporary leave at the end of February and was fired in the beginning of March.
20   "[T]emporal proximity alone [however] is not sufficient to raise a triable issue as to pretext once the
21   employer has offered evidence of a legitimate, nondiscriminatory reason for the termination."
22   *Franco v. Pier 1 Imps., Inc*. No. EDCV 07-946-VAP (JCRx), 2008 WL 4217848, at *19 (C.D. Cal.
23   Sept. 11, 2008) (quoting *Arteaga v. Brink's, Inc.*, 163 Cal. App. 4th 327 (2008) (calling temporal
24   proximity merely a "scintilla of discriminatory evidence")); *see also Smith v. Allen Health Sys., Inc.*,
25   302 F.3d 827, 833-34 (8th Cir. 2002). Kone has offered such evidence; Huck's trip to Hawaii
26   violated numerous company policies and was a legitimate nondiscriminatory reason for termination.
27   *See Dumas v. New United Motor Mfg., Inc.*, 305 Fed. Appx. 445 (9th Cir. 2008) (finding no
28   showing of pretext when the employer established that the employee violated company policy by

1  failing to get permission for leave of absence). Whether Viehweg knew of Huck's intention to
2  travel to Hawaii or not does not alter this conclusion. Huck is unable to establish pretext and his
3  discrimination claim cannot survive a motion for summary judgment.

   B.  Retaliation Claim

Huck's complaint and opposition papers indicate that he intended to assert a FEHA retaliation claim against Kone as well. He contends that Kone retaliated against him for seeking a reasonable accommodation for his disability when he asked for a temporary leave of absence. Kone moves for summary judgment on this claim, asserting that Huck fails to establish a prima facie claim for retaliation. Courts considering summary judgment motions arising from FEHA retaliation claims also employ the *McDonnell Douglas* framework. *See Scotch v. Art Institute of Cal.*, 173 Cal. App. 4th 986, 1020 (2009)). The employee must first demonstrate a prima facie claim of retaliation. The employer then needs to proffer a legitimate, nondiscriminatory reason for the adverse employment action. If the employer fulfills this burden, the framework then requires the employee to establish that the retaliation was intentional. *Id.* at 1021.

To establish a prima facie claim for FEHA retaliation, plaintiff must show that "they engaged in protected activity, their employer subjected them to adverse employment action, and there was a causal link between the protected activity and employer's actions." *Lee v. Eden Med. Ctr.*, 690 F. Supp. 2d 1011, 1026 (N.D. Cal. 2010) (citing *Iwekaogwu v. City of Los Angeles*, 75 Cal. App. 4th 803, 814 (1999)). Here, Kone challenges Huck's prima facie claim with respect to causation, arguing that plaintiff was fired not as retaliation against his request for an accommodation, but rather because of his company policy violation. Kone contends that Huck cannot rely on the temporal proximity between the termination and the request for accommodation to establish causation for purposes of his prima facie claim.

As discussed above, "[c]ausation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002); *see also Taylor v. City of Los Angeles Dept. of Water & Power*, 144 Cal. App. 4th 1216, 1235 (2006) ("Close proximity in time of an adverse action to an employee's resistance or opposition to unlawful conduct is often strong evidence of a retaliatory

motive."). Huck's prima facie claim, however, fails for another reason: he did not engage in a protected activity under FEHA before his termination. FEHA's anti-retaliation provision is intended to protect employees who engage in a protected activity to oppose discriminatory action by an employer and are, subsequently, subjected to retaliatory measures. *See, e.g.*, *Villiarmo*, 281 F.3d at 1065 (considering a retaliation claim after an employee complained about sexual harassment); *Nielson v. Trofholz Techs., Inc.*, 750 F. Supp. 2d 1157, 1169-70 (E.D. Cal. 2010) (finding protected activity when an employee opposes conduct that is either actually unlawful, or the "employee reasonably and in good faith believes is unlawful"); *Scotch*, 173 Cal. App. 4th at 1020 (holding that plaintiff engaged in protected activity when he reported "weird retaliation" against him). As part of a prima facie claim for retaliation, plaintiff must prove that he partook in such a protected activity. This showing does not require plaintiff to have filed a formal complaint. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028 (2005). The employee must, however, have opposed activity that the employee reasonably believes constitutes unlawful discrimination. "[C]omplaints about personal grievances or vague" remarks do not qualify as protected activity. *Id.* at 1047. This is because the crucial question in determining whether the employee has engaged in a protected activity is whether the employer was on notice of what conduct it needed to investigate for wrongdoing. *Id.*

In plaintiff's opposition, he states that "Kone retaliated against him for exercising his rights to reasonable accommodation under the FEHA." (Pl's. Opp'n to Mot. for Summ. J. at 10). He asserts that Kone retaliated against him for asking to take medical leave. Requesting medical leave is not a protected activity. It does not formally or informally oppose employer discrimination. Nor does it put Kone on notice as to what conduct needs to be investigated. While Huck maintains he felt abused by Viehweg for being disabled, he does not claim that he made these grievances known. *See, e.g.*, *Luchetti v. Hershey Co.*, No. C 08-1629 SI, 2009 WL 2912524, at * 4-5 (N.D. Cal. Sept. 9, 2009) (holding that plaintiff's informal email complaint was insufficient to make his grievances known to the employer for purpose of a retaliation claim). He cannot, therefore, establish that he engaged in protected activity under FEHA before his termination.[5]

---

[5] Notably, Huck did engage in protected activity under FEHA when he contacted the San Francisco Department of Labor in May 2009. This action, however, does not satisfy plaintiff's burden to state a prima facie of retaliation because he contacted the Department of Labor after he was fired in March 2009. It follows that Kone could not have decided to fire him based on this protected activity

No. C 10-01845 RS
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT
15

United States District Court
For the Northern District of California

### C. Harassment Claim

Huck's complaint also suggests that he intended to assert a separate harassment claim pursuant to FEHA. To establish a claim of harassment under FEHA, a plaintiff must show that: (1) plaintiff is a member of a protected group; (2) plaintiff was subjected to harassment because he belonged to this group; and (3) the alleged harassment was so severe that it created a hostile work environment. *See Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal. 4th 121, 130 (1999). This requires plaintiff to demonstrate that there existed a "concerted pattern of harassment of a repeated, routine, or generalized nature." *Id*. at 131. The harassment must have been "sufficiently severe or pervasive" to change employment conditions. *Chavez v. City of Los Angeles*, 111 Fed. Appx. 881, 883 (9th Cir. 2004). When an employer performs a "necessary personnel management action[] such as hiring and firing," it does not constitute harassment. *Reno v. Baird*, 18 Cal.4th 640, 646-47 (1998).

The Complaint fails to state sufficient facts to support a harassment claim. Huck alleges that Viehweg screamed and cursed at him for missing a meeting during the February 26, 2009, phone call. He also states Viehweg was angry when Huck informed him that he could not attend a March 6, 2009, meeting. Despite the fact that Huck maintains that his conversations with Viehweg made him fear for his job, he has not demonstrated harassment. Harassment entails a pattern of "severe or pervasive" behavior. This pattern must have an effect on plaintiff's working conditions. Huck has not alleged sufficient facts of pervasive behavior or changed work conditions.

### D. Failure to Provide Reasonable Accommodation

Huck also indicates that his wrongful termination suit is based on Kone's failure reasonably to accommodate his disability. In order to state a prima facie claim for failure to accommodate under FEHA, a plaintiff must demonstrate that: (1) plaintiff has a disability under the Act; (2) plaintiff is qualified to perform the essential functions of the position; and (3) the employer failed reasonably to accommodate plaintiff's disability. *See* Cal. Gov. Code § 12940(m). The first two elements of a prima facie claim for failure to accommodate are identical to two factors in the prima

---

that occurred three months after termination. *See Timmons v. UPS, Inc.*, 310 Fed. Appx. 973, 975 (9th Cir. 2009) (upholding the granting of summary judgment on a retaliation claim when the employee's protected activities occurred after the employer took an adverse employment action).

facie claim for disability discrimination. The Court has already concluded that Huck is disabled under FEHA and that he is qualified to perform the essential functions of his position at Kone. All that remains, therefore, is the determination of whether Kone failed reasonably to accommodate Huck's disability.

Under FEHA an employer must make a reasonable accommodation for the known disability of an employee. *See* Cal. Gov. Code § 12940(m). A "reasonable accommodation" involves "job restructuring, part-time or modified work schedules . . . and other similar accommodations for individuals with disabilities." Cal. Gov. Code § 12926(n)(2); Cal. Code Regs. tit. 2 § 7293.9(a)(2). A temporary leave of absence is considered a reasonable accommodation under the FEHA. *See Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 225 (1999) (stating that finite leave can constitute a reasonable accommodation if it is likely the employee will eventually return to work).

Looking at the evidence in the light most favorable to plaintiff, there are insufficient facts to conclude that Kone refused to provide Huck with a reasonable accommodation: In Viehweg's declaration he states that he never instructed Huck his medical leave would not be granted. Additionally, Kone contacted Huck to fill out the short-term disability forms for the very purpose of implementing Huck's medical leave, albeit around the time Huck was fired. Huck does assert that Viehweg was angry when he missed a meeting the day after he informed Kone about his temporary leave. Viehweg was also upset when Huck could not attend a March 3, 2009, meeting and allegedly stated "You do not get to decide when you work and when you don't. That is up to KONE to determine, not you or your doctor." (Compl. ¶ 14). Employer dissatisfaction, however, without any other evidence of failure to accommodate, is insufficient to establish a reasonable accommodation claim under FEHA. *See Hanson*, 74 Cal. App. 4th at 225. Huck must be able to convince a reasonable factfinder that KONE refused to accommodate him. By Huck's own admission, he was accommodated. In spite of Viehweg irritation, Huck received dictation software from Kone, took time off, and planned on completing his short-term leave until the doctor advised him to return to work. There are no triable issues regarding defendant's failure to accommodate.

E. <u>Failure to Engage in the Interactive Process</u>

As part of his wrongful termination claim, Huck asserts that Kone violated Cal. Gov. Code § 12940(n) by not engaging in the interactive process. FEHA requires employers to "engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation." *Scotch*, 93 Cal. Rptr. 3d at 352 (internal citation and quotation marks omitted). In considering these types of claims, courts must determine what caused the breakdown in the interactive process and ascertain who is to blame for the collapse. *Barnett v. U.S. Air. Inc.*, 228 F.3d 1105, 1114-15 (9th Cir. 2000), *vacated on other grounds*, 535 U.S. 391 (2002). Employers will only be liable if they bear responsibility for the breakdown. *Id.* at 1114.

Huck first spoke with Kone about his disability at the end of 2008. He requested dictation software and Kone immediately provided him with "Dragon Speak." When his pain persisted despite the accommodation, he determined, on the advice of his doctor, that he needed to take some time off. He informed Kone of his decision and took time to rehabilitate, flying to Hawaii for a few days of rest. Although Huck asserts that his decision to take medical leave was met with anger from his supervisor, he does not demonstrate that Kone refused to provide him with leave. In fact, undisputed facts support that Kone did allow Huck to go on medical leave. Consequently, Huck cannot prove that Kone failed to engage in the interactive process. *See Krieg v. U.S. Foodservice, Inc.*, No. C 10–02491 WHA, 2011 WL 4344568, at *7 (N.D. Cal. Sept. 14, 2011) (dismissing plaintiff's claim when evidence showed that employer already provided a reasonable accommodation). This claim cannot survive a motion for summary judgment.

F. <u>Intentional Infliction of Emotional Distress</u>

A claim for intentional infliction of emotional distress requires a showing of: "(1) extreme or outrageous conduct by defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009). Plaintiff must illustrate that defendant's conduct was so extreme that it "exceeds all bounds" tolerated in civilized society. *Id.* at 1050. Furthermore, plaintiff must establish that defendant's outrageous conduct caused him such severe

emotional distress that no reasonable person "in civilized society should be expected to endure it." *Id.* at 1051.

Huck is unable to demonstrate that anyone at Kone engaged in extreme or outrageous conduct sufficient to satisfy a claim for intentional infliction of emotional distress. He asserts very few facts with regards to this claim for relief. Huck merely alleges that Viehweg yelled at him for missing meetings and censured him for traveling to Hawaii. Viehweg's verbal disapproval was entirely work-related and within the bounds of civilized society. *See Lawler*, 2011 WL 1466129, at \*7 (holding that an employer's work-related criticism was not extreme conduct); *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (1996) ("A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged.").

Furthermore, Huck has not established that he suffered severe emotional distress. While he states that he suffered "mental anguish, depression, anxiety, and other physical manifestations of stress," he does not include any facts to support this assertion. (Compl. ¶ 32). Kone, therefore, is entitled to summary judgment on Huck's claim for intentional infliction of emotional distress.

## IV. CONCLUSION

There are no genuine issues of material fact concerning Huck's employment law claims. Kone's Motion for Summary Judgment therefore must be granted.

IT IS SO ORDERED.

Dated: 12/15/11

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE